IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Gerald M. SCHWARTZ, Attorney at Law.

Supreme Court

*No. 91-0021-D. Submitted on briefs February 3, 1993.—Decided March 19, 1993.*

(Also reported in 496 N.W.2d 605.)

For Gerald M. Schwartz, there were briefs by *Steven J. Rollins, Richard J. Cayo* and *Halling & Cayo, S.C.*, Milwaukee.

For the Board of Attorneys Professional Responsibility there was a brief by *John B. McCarthy.*

PER CURIAM. *Attorney disciplinary proceeding: attorney's license suspended.*

This is an appeal by Attorney Gerald M. Schwartz from the referee's conclusions that his conduct in the

representation of clients in a personal injury matter violated several of the rules of professional conduct for attorneys. Attorney Schwartz also appealed the referee's recommendation that the court suspend his license to practice law in Wisconsin for 60 days as discipline for that professional misconduct.

We adopt the referee's conclusions in respect to Attorney Schwartz' professional misconduct and determine that the recommended 60-day license suspension is appropriate discipline to impose for it. Attorney Schwartz' failure to keep his clients advised of significant developments in their personal injury action, his having acted contrary to his clients' explicit direction in seeking a settlement of their claim, his failure to timely conclude a settlement of their claim and subsequent failure to promptly deliver their file to counsel they retained to replace him constitute misconduct sufficiently serious to warrant the suspension of his license to practice law. The length of the license suspension we impose takes into account Attorney Schwartz' prior discipline and circumstances considered by the referee in mitigation of the seriousness of his misconduct.

Attorney Schwartz was admitted to practice law in Wisconsin in 1979 and practices in Milwaukee. In 1987 the court suspended his license for 90 days as discipline for professional misconduct in his representation of a client in a personal injury case, which included his neglect of the client's legal matter, misrepresentations to the court concerning his client's availability for trial, purporting to settle the matter without his client's consent by the use of settlement documents on which he signed his client's name and failure to notify his client of the receipt of settlement funds and promptly disburse them to the client. *Disciplinary Proceedings Against Schwartz,* 134 Wis. 2d 18, 397 N.W.2d 98 (1986).

The facts found by the referee, Attorney John R. Decker, are not in dispute. They concern Attorney Schwartz' representation of a couple who retained him in June, 1985 to represent them on a claim for injuries the woman sustained in an automobile accident and on her husband's derivative claims.

After the clients, acting on Attorney Schwartz' recommendation, rejected the insurer's structured settlement offers, Attorney Schwartz commenced an action in circuit court on May 13, 1988. The following month, the insurer's attorney, Michael Mesirow, sent Attorney Schwartz a medical authorization form, a set of written interrogatories and a request for production of documents; on the same day, he offered to settle the clients' claims for $35,000 in a lump sum. Attorney Schwartz sent copies of the discovery documents to his clients and advised them of the settlement offer, which he recommended they reject in light of the $29,000 in special damages they had incurred. He also directed Mrs. Arora to answer the interrogatories and to contact him if she were unsure of an answer or needed assistance.

Before sending those documents to his clients, Attorney Schwartz altered the medical release so as to require any health care provider responding to it to provide him an identical copy of any medical records provided to Attorney Mesirow pursuant to the authorization. When he told Attorney Mesirow of the change he made to the release, Attorney Mesirow objected on the basis that it would result in disclosure of his attorney work product. Over the next three months Attorney Mesirow insisted that Attorney Schwartz provide him a signed copy of the authorization he had sent. Attorney Schwartz refused to do so but did not consult with his clients or inform them of his position.

Four times between the beginning of July and the end of August, 1988, Attorney Mesirow asked Attorney Schwartz to have his clients answer the interrogatories, advising in his last communication that if he did not receive the answers and a medical authorization within 10 days, he would bring a motion in the circuit court for their production. Attorney Schwartz sent his clients a copy of that letter and again asked Mrs. Arora to provide the answers to the interrogatories and return them to him. He copied Attorney Mesirow on that letter to his clients.

Mrs. Arora, who had not previously retained a lawyer or been involved in a lawsuit, testified that she penciled in answers to the interrogatories and returned them to Attorney Schwartz within a week, telling him that several of the questions sought information she did not have but believed was in his file. Attorney Schwartz did not recall that his client made such a prompt response, nor did he recall her having penciled in the answers.

When the medical authorization and the answers to the interrogatories were not forthcoming, Attorney Mesirow filed a motion on October 24, 1988 to compel the plaintiffs to answer the written interrogatories and execute the medical authorization form as submitted. Attorney Schwartz did not provide copies of the discovery motion papers to his clients, nor did he inform them of the hearing to be held on the motion. Attorney Schwartz provided no responses whatever to the interrogatories prior to or at the hearing on November 14, 1988. During the course of the Board's investigation of this matter and again at the disciplinary hearing, Attorney Schwartz admitted that the failure to provide answers to the interrogatories was a result of his lack of diligence but testified that his clients' inaction contributed to it.

At the motion hearing, the court ordered the action dismissed on its merits if responses to the written interrogatories were not properly served on opposing counsel by November 29, 1988, and directed Mrs. Arora to execute the medical release form originally submitted. The court also ordered the plaintiffs to pay $273.25 in opposing counsel's attorney fees on the motion. Attorney Schwartz did not tell his clients of the order or of the sanction imposed by the court, which he paid with his own funds.

On the last day for service of the answers to the interrogatories, Attorney Schwartz completed a draft of the answers, obtained his client's signature on it and delivered it to Attorney Mesirow's office. The signature page of the answers contained Attorney Schwartz' authentication of his client's signature but it did not set forth that the answers had been given under oath and Attorney Schwartz did not sign it in his capacity as attorney in respect to the objection made to one of the questions. Attorney Schwartz objected to that interrogatory, which asked for a specification of doctors, hospitals and other health care providers Mrs. Arora consulted prior to the automobile accident, on the ground that it was not limited as to time covered.

On December 12, 1988, Attorney Mesirow filed another motion for discovery sanctions and a motion to dismiss, on the ground that the objection to the interrogatory violated the court's discovery order. The court set a hearing on the motion for January 9, 1989 and a scheduling conference in the action for January 18, 1989. At the hearing, the court denied the motion to dismiss, limited the scope of the interrogatory objected to and ordered the plaintiffs to answer it as limited by the court by January 19, 1989 and imposed a $200 sanction on the plaintiffs. Attorney Schwartz subsequently told his cli-

ents the court had directed them to answer the interrogatory in modified form but did not tell them that Attorney Mesirow had filed a motion to dismiss, did not give his clients a copy of the motion papers and did not tell them of the hearing held on the motion or the order resulting from it in any further detail. He also did not tell them of the monetary sanction that had been imposed, which he paid with his own funds.

Three days prior to the hearing on the motion to dismiss, Attorney Schwartz had several telephone conversations with Attorney Mesirow to discuss settlement. Although there was no suggestion that he had discussed his position with his clients or had their authorization to settle, Attorney Schwartz told Attorney Mesirow that he would settle all claims for $50,000. Attorney Mesirow offered $40,000 and, shortly thereafter, Attorney Schwartz told him he was still checking with his clients but that he had recommended they accept the $40,000 settlement offer. It appeared, however, that Attorney Schwartz had had no discussions with his clients that day.

Following the motion hearing, Attorney Schwartz wrote his clients that it was Attorney Mesirow who had "rephrased" the interrogatory to which he had objected and that the judge had "approved" the rephrasing. In that letter he also told his clients of the $40,000 offer and said that if they did not accept it and a trial resulted in damages of a lesser amount, which he termed "quite possible," they would be required to pay the insurer double its costs, disbursements and attorney fees in the action. Some time later, Attorney Schwartz discovered that his advice was erroneous and was based on his having misread the applicable statute.

After receiving that letter, the clients met with Attorney Schwartz on January 11, 1989, at which time

he told them that Attorney Mesirow had said that Mrs. Arora had been "overtreating" with doctors and that medical reports suggested that the problems of pain she continued to report were psychological rather than physical. Attorney Schwartz then reviewed with his clients the calculation of his attorney fees based on a $40,000 settlement and the amount he computed as his clients' special damages. Based on his figures, Attorney Schwartz concluded that his clients would net $6,000 from that settlement and strongly recommended that the clients accept it. In light of that information and recommendation, the clients told him they would accept the $40,000 offer.

Later the same day, when telephoned by Attorney Mesirow, Attorney Schwartz told him that $40,000 would settle the case, including all subrogation claims. When Attorney Mesirow said he wanted to make settlement drafts payable to each of the subrogated parties to ensure that their claims would be resolved in the settlement, Attorney Schwartz agreed to provide him a proposed distribution of the settlement funds.

After leaving Attorney Schwartz' office, the clients further considered the settlement offer. Recalling Attorney Schwartz' recommendation against the earlier $35,000 settlement offer on the basis of their $29,000 in special damages and reviewing the figures Attorney Schwartz provided at the meeting earlier that day, the clients concluded that the $40,000 settlement might actually require them to pay their own funds rather than netting them $6,000. Concerned that Attorney Schwartz was pressuring them to settle the case, they made an appointment to meet with him on January 21, 1989 to further review the proffered settlement.

On January 16, 1989, Attorney Schwartz called Attorney Mesirow to discuss the status of several subro-

gated interests and Attorney Schwartz told him he would provide specific payout figures for the settlement checks. Attorney Mesirow then told the insurer that the case had been settled and notified the court that it had been settled and asked that the January 18, 1989 scheduling conference be removed from the calendar.

When Mr. and Mrs. Arora met with Attorney Schwartz on January 21, 1989 to discuss their concerns about settling the case for $40,000, Attorney Schwartz told them the case was settled when he telephoned Attorney Mesirow on January 11 following their meeting and that the court had been informed of the settlement and the clients could not retract their acceptance. When the clients told him they would like to get a second opinion from another lawyer, Attorney Schwartz agreed, offering to pay one-half of the consultation fee for that opinion.

The referee found that the precise meaning of the clients' instructions to Attorney Schwartz at the conclusion of the January 21, 1989 meeting was in some dispute. The clients said they told him not to conclude a settlement at $40,000; Attorney Schwartz said his clients told him to maintain the status quo and not conclude a settlement at $40,000 or do anything that would jeopardize the $40,000 settlement that had been offered.

Attorney Mesirow wrote Attorney Schwartz on February 3, 1989 to confirm acceptance of the $40,000 settlement and to prod him to complete the list of settlement payments he had promised. Attorney Schwartz called Attorney Mesirow on February 14, 1989 and told him that his clients were seeking a second opinion in respect to the offered settlement but he also told him that "his people accepted the $40,000."

On February 20, 1989, the Aroras met with Attorney John Swietlik and gave him a complete copy of their file

they had obtained from Attorney Schwartz, which Attorney Swietlik determined was substantially incomplete. The following day, Attorney Swietlik telephoned Attorney Mesirow to inform him that he had been consulted by the Aroras and was considering taking over the case. When Attorney Mesirow responded that the case had been settled for $40,000 and that he would bring a motion to enforce that settlement, Attorney Swietlik asked whether the settlement had been confirmed in writing by Attorney Schwartz. When Attorney Mesirow told him it had not, Attorney Swietlik opined that a motion to confirm the purported settlement would be unsuccessful.

Almost immediately after that conversation, Attorney Mesirow told Attorney Schwartz of his conversation with Attorney Swietlik and asked whether Attorney Schwartz had indeed possessed settlement authority when he previously purported to accept the $40,000 offer. Attorney Schwartz told him he did and had written a letter to his clients on the same day, January 11, 1989, confirming the settlement at $40,000. After learning his clients had given the copy of his file to Attorney Swietlik, who was considering taking over the case, Attorney Schwartz telephoned Attorney Mesirow a second time that day and told him he had not been discharged as counsel and his clients had not retracted or withdrawn approval of the settlement. Attorney Mesirow asked him to send a letter confirming that and Attorney Schwartz agreed to do so.

Attorney Schwartz then wrote Attorney Mesirow the following letter, dated February 21, 1989:

> This letter is to confirm the fact that on January 11, 1989, the plaintiffs in the above-entitled action authorized settlement of this action in the sum of $40,000, to include all claims encompassed in the

> lawsuit as well as subrogation claims. This was confirmed by correspondence with my clients on January 11, 1989.
>
> It is my position that in fact the litigation has been resolved for the $40,000 settlement accepted by the Aroras.

Attorney Schwartz sent a copy of that letter to his clients, who showed it to Attorney Swietlik the following day, informing him that they had previously told Attorney Schwartz not to conclude a settlement at the $40,000 offered. Attorney Swietlik concluded that Attorney Schwartz was attempting to confirm the settlement contrary to his clients' expressed directions in order to make that settlement enforceable by the insurer.

Attorney Swietlik then telephoned Attorney Mesirow and told him that the Aroras had discharged Attorney Schwartz as their attorney, that they previously had told Attorney Schwartz they did not accept the $40,000 settlement and that they had obtained a copy of their file from Attorney Schwartz more than a week earlier. The following day, Attorney Swietlik sent a letter to Attorney Schwartz, with a copy to Attorney Mesirow, confirming and elaborating on those matters. Attorney Swietlik then proposed to take on the Aroras case but, because of the additional expense, they did not retain him.

Soon after she was injured in another automobile accident on March 5, 1989, Mrs. Arora discussed with Attorney Schwartz the possibility of his resuming her representation in the pending action. However, she did not tell him of the March 5 accident but did discuss with him the possibility of his reducing his fee in the pending case if it were settled at $40,000. Mrs. Arora and Attorney Schwartz then agreed that he would continue to serve as her and her husband's attorney, that the original

fee agreement would remain in effect and that the claims would be settled for $40,000.

On March 15, 1989 Attorney Schwartz wrote his clients that his previous advice about their being responsible for double costs in the event they did not accept the $40,000 settlement had been incorrect and he told them they were not forced to accept the $40,000 settlement but could proceed to trial. He acknowledged that they had wanted him to accept the $40,000 pursuant to their original retainer agreement and asked them to sign that letter to indicate they had read and understood it and were authorizing him to settle the case for $40,000. The clients declined to sign the letter but instead sent Attorney Schwartz their own letter, dated March 16, 1989, stating, "This is to authorize you to resolve the dispute for the $40,000 pursuant to our original attorney/client fee agreement."

After receipt of the Aroras' authorization letter, Attorney Schwartz and Mrs. Arora had several conversations over the next few weeks. Attorney Schwartz told her he was in the process of collecting information from insurers and health care providers and was negotiating with the subrogees in order to reduce the amounts they would be willing to accept on their claims, thus increasing her net recovery. During that time, Attorney Schwartz also told Attorney Mesirow that he had been reauthorized to conclude the settlement on behalf of his clients and the case in fact was settled for $40,000. Attorney Schwartz said he would be able to provide the itemization of the settlement payments by May 5, 1989.

In April, 1989, Mrs. Arora told Attorney Schwartz she would be leaving for India on June 23 and would spend the summer there. When she said she wanted the settlement paid prior to her departure, Attorney Schwartz told her he would complete the settlement by

that time. A few weeks after that, Mrs. Arora again telephoned Attorney Schwartz to express her concern that the settlement be concluded prior to her departure and asked what was preventing the matter from being concluded. In response, Attorney Schwartz told her he was negotiating claims with various health care providers, among them one whose claim Mrs. Arora herself already had paid in full. Mrs. Arora then suspected that Attorney Schwartz was not being truthful when he said he was negotiating the claims of the health care providers. Notwithstanding his statement to his clients that he was actively working on the case since the March 16 reauthorization to effectuate the settlement, Attorney Schwartz admitted to the Board during its investigation that he did not actively pursue conclusion of the case for some time out of concern that Mrs. Arora might again change her mind about accepting the settlement.

During mid-June, 1989, Mrs. Arora consulted with Attorney Kenneth Phillips concerning the problem she and her husband were having in concluding their claim. On the day before she left for India, Mrs. Arora met with Attorney Phillips, who encouraged her to file a grievance against Attorney Schwartz with the Board of Attorneys Professional Responsibility. Later that day, she submitted a grievance to the Board and Attorney Phillips wrote Attorney Schwartz to advise that the Aroras were extremely dissatisfied with his services and had consulted with him about their case and that Attorney Schwartz was terminated as their counsel and should immediately provide Attorney Phillips a complete copy of their file. Attorney Phillips sent a copy of his letter to the circuit court and to the Board.

Soon after receiving that letter, Attorney Schwartz telephoned Attorney Phillips to express his displeasure with the position taken by Attorney Phillips but he was

unable to recall whether at that time he asked for written confirmation from his clients of their termination of his representation. The referee found that Attorney Schwartz did not make that request.

On September 1, 1989, Attorney Phillips wrote to Attorney Schwartz reminding him of his demand for a complete copy of the Arora file on June 22 and repeated that demand. He told him the items from the file previously provided to Mrs. Arora constituted merely a "skeleton" portion of the file and it was obvious that many pertinent portions were missing. A few days later, Attorney Schwartz wrote to Attorney Phillips requesting a written authorization from the Aroras concerning his termination as their attorney, stating that, upon receipt of that authorization, he would personally deliver his entire file for Attorney Phillips to copy. On or about October 8, 1989, Attorney Schwartz received a letter from Attorney Phillips, signed by Mr. and Mrs. Arora, confirming their termination of his services and again demanding delivery of the Arora file. Attorney Schwartz received that letter but continued to refuse to furnish the file to Attorney Phillips.

Meanwhile, aware of Attorney Phillips' repeated attempts to obtain the Arora file from Attorney Schwartz, Attorney Mesirow wrote to Attorney Schwartz on November 7, 1989 stating that, unless he received some confirmation concerning the settlement or movement of the case toward conclusion by November 30, he would bring a motion to dismiss the action for failure to prosecute. He sent a copy of that letter to the court and asked the court to set a scheduling conference. On November 30, 1989, Attorney Schwartz filed a motion seeking leave to withdraw as counsel for the Aroras and asking that their file be transferred under court supervision. He also requested that his lien rights

in the proceeds of the case be preserved. On December 8, 1989, Attorney Mesirow filed a motion to dismiss the action for lack of prosecution.

At the December 11, 1989 hearing on his motion for leave to withdraw, Attorney Schwartz produced the Arora file and transferred it to an attorney in the Phillips law firm. That attorney, who was described as "designated custodian" of the file, had been unable to review it and was not in a position to assume representation of the Aroras at that time. Thus, the referee found, Mrs. Arora appeared at that hearing essentially unrepresented. Soon thereafter, the attorney from the Phillips law firm took on representation of the Aroras case and, following depositions and other proceedings, settled their case on January 29, 1991 for $50,000. Attorney Schwartz agreed to accept $2,500 as his portion of the attorney fees in the matter.

On the basis of these facts, the referee concluded that Attorney Schwartz engaged in professional misconduct in four respects:

1. He failed to exercise reasonable diligence in handling his clients' legal matter, in violation of SCR 20:1.3,[1] by failing to submit discovery responses despite repeated requests for them. The referee found that his initial failure to make responses exposed his clients to sanctions, including dismissal of their claims on the merits, at a motion hearing on November 14, 1988. Further, when faced with an order of dismissal unless proper service of interrogatory answers were made by a specified date, he submitted improperly executed answers on the last possible day, thus needlessly and recklessly jeop-

---

[1] SCR 20:1.3 provides:

**Diligence**
    A lawyer shall act with reasonable diligence and promptness in representing a client.

ardizing his clients' rights. He also failed to exercise reasonable diligence by failing to conclude a settlement of his clients' claim during the three-month period from March 17, 1989 to June 23, 1989 despite his clients' explicit instructions to complete the settlement by the latter date.

2. Attorney Schwartz failed to keep his clients reasonably informed of the status of their case, in violation of SCR 20:1.4(a),[2] by failing to inform them of the pendency of the two motions for imposition of discovery sanctions and the motion to dismiss and of the two impositions of sanctions by the court. In this respect, the referee said, "Where an attorney suggests, as the respondent does here, that the client has not cooperated in providing discovery responses and is at least in part responsible for delay in providing discovery, the lawyer has the obligation to apprise the client of the pendency of motions for discovery sanctions and of the result of those motions."

3. Attorney Schwartz failed to abide by his clients' wishes, in violation of SCR 20:1.2(a),[3] when he purported, verbally and in writing, to confirm a settlement

---

[2] SCR 20:1.4 provides:

**Communication**

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

[3] SCR 20:1.2 provides:

**Scope of representation**

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall inform a client of all offers of settlement and abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be

of their claim after they had directed him to refrain from concluding the settlement pending an opportunity to obtain a second opinion.

4. Attorney Schwartz failed to take steps reasonably necessary to conclude his representation of these clients, contrary to SCR 20:1.16(d),[4] by failing to make their file available to them or to successor counsel from June 23 to September 3 and from October 8, when he received their written confirmation of termination of his services, to December 11, 1989, when he turned the file over to successor counsel at the hearing on his motion to withdraw from their representation.

In determining appropriate discipline to recommend for Attorney Schwartz' misconduct, the referee considered as an aggravating factor that his license suspension in 1986 as discipline for misconduct similar in nature to that considered in this proceeding was imposed approximately 18 months after the Aroras retained him to represent them and some 18 months before the insurer's counsel submitted written interrogatories in their action. As mitigating factors, the referee considered that Attorney Schwartz has not handled any personal injury matters following the Aroras' case, he fully cooperated with the Board in its investigation of this matter and, while

---

entered, whether to waive jury trial and whether the client will testify.

[4] SCR 20:1.16 provides:

**Declining or terminating representation**

. . .

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

327

representing the Aroras, he was suffering from stress in his personal life.

In his appeal from the referee's conclusions and recommendation, Attorney Schwartz first argued that his confirmation of his clients' acceptance of the $40,000 settlement offer was proper, as his clients had instructed him to do nothing that would either conclude the settlement at that amount or jeopardize it. In light of the fact that the clients subsequently told him they had misgivings about the settlement and wanted the opportunity to obtain a second opinion, Attorney Schwartz' argument is unpersuasive. Likewise unpersuasive is his contention that in his February 21, 1989 letter to the insurer's counsel he was merely confirming his clients' initial acceptance of the settlement offer on January 11, 1989 and, on that date, he had their authority to conclude the settlement.

We also reject Attorney Schwartz' argument that his failure to respond in any way to written interrogatories, even after being served with a motion for discovery sanctions, and his failure to provide a response prior to or at the hearing on that motion did not constitute a failure to exercise reasonable diligence and promptness on behalf of a client. If his contention that such conduct was "typical of personal injury practice in the Milwaukee legal community" is accurate, our determination of this proceeding shall serve to put those and all other attorneys on notice that such conduct violates a lawyer's professional duty to exercise reasonable diligence and promptness on behalf of clients.

Attorney Schwartz next contended that his intentionally having done nothing to conclude the settlement of his clients' claim after they reauthorized him to settle their case in March, 1989 and his delay in turning over their file to successor counsel thereafter were defensible,

the former because his clients had previously changed their position in respect to accepting a prior settlement offer and the latter because it was not the first time an attorney told him the Aroras had discharged him. Those facts, however, do not excuse Attorney Schwartz' failure to exercise reasonable diligence in handling his clients' settlement and take reasonable steps necessary to conclude his representation after they discharged him.

Finally, Attorney Schwartz asserted that he had no obligation to provide his clients copies of the motions to compel discovery or the motion to dismiss or otherwise inform them of proceedings on those motions because it was unnecessary for them to have that information, as it did not concern matters in which they were directly concerned and was not the kind of information they needed in order to be reasonably informed of the progress of their claim. Moreover, he asserted, he paid the costs assessed on those discovery motions himself and, consequently, his clients did not need to know the sanctions had been imposed. Attorney Schwartz' arguments are without merit, most obviously his contention that his clients did not need to know that the court had ordered dismissal of their action on the merits if answers to interrogatories—answers Attorney Schwartz had asked his client to provide—were not timely filed. Similarly, it cannot seriously be contended that a client is not entitled to know of court-imposed sanctions for their attorney's failure to comply with discovery orders so that the clients might assess the quality of representation they are receiving.

On the issue of discipline to be imposed for his misconduct, we reject Attorney Schwartz' contentions that the seriousness of his misconduct, in light of the mitigating circumstances noted by the referee, warrants discipline no more severe than a public reprimand. His

assertion that the ultimate resolution of his clients' claim was "virtually the same" as the settlement he was attempting to conclude when they discharged him ignores the additional delay in their obtaining the settlement that was caused, in part, by his refusal to turn over the clients' file to successor counsel for almost six months following his discharge.

In view of the seriousness of his misconduct in the handling of his clients' personal injury claim and the attendant circumstances, including his prior discipline for similar misconduct, suspension of Attorney Schwartz' license to practice law is warranted. We accept the referee's recommendation of a license suspension for 60 days.

IT IS ORDERED that the license of Gerald M. Schwartz to practice law in Wisconsin is suspended for a period of 60 days, commencing May 1, 1993.

IT IS FURTHER ORDERED that within 60 days of the date of this order Gerald M. Schwartz pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Gerald M. Schwartz to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Gerald M. Schwartz comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.